UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Cause No. 2:22-CR-29-PPS-JEM |
| SCOTT PATRICK DECKER, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On June 10, 2021, Scott Patrick Decker got into an argument with his girlfriend over the phone. [DE 50 at 4.] He got so angry that he took out a Taurus 9mm handgun and fired a shot into the ground. [*Id.*] His neighbors, already alerted to his yelling, understandably became concerned at the sound of a gunshot and called the Hammond Police Department. [*Id.*] Upon arrival, the police learned that Decker had multiple outstanding warrants for his arrest, including for criminal confinement while armed with a deadly weapon, unlawfully possessing a firearm as a serious violent felon, and intimidation. [*Id.*]

A tense negotiation ensued. For several hours, negotiators and a SWAT team discussed Decker's surrender to law enforcement, which he eventually did without further incident. [*Id.*] Decker's mother also arrived at the scene and informed officers that Decker lived in the basement of her residence. [*Id.*] She consented to a search of her basement, and officers located the Taurus 9mm handgun in the top drawer of a dresser.

[*Id.*] Decker admitted in an ATF interview the next day that he was a convicted felon and had used his girlfriend's Taurus handgun to fire a shot into the ground during the argument with her over the phone. [*Id.*] Decker's girlfriend told a similar story to investigators and acknowledged her ownership of the handgun. [*Id.*]

Decker pleaded guilty to a Superseding Indictment [DE 21] charging him with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DE 40; DE 43.] At the time of the June 10, 2021, incident, Decker had been convicted of several felonies in Indiana. I sentenced Decker on September 7, 2023, to 92 months in custody and two years of supervised release. [DE 60; DE 61.] Decker did not appeal his sentence. Decker filed a timely *pro se* motion to vacate his sentence under 28 U.S.C. § 2255, which is ripe for my review. [DE 68; DE 69; DE 75; DE 77.] Decker's motion raises one ground for relief based on ineffective assistance of counsel for failing to address the Supreme Court case *N.Y. Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), which was decided before Decker pleaded guilty. For the reasons explained below, Decker's argument lacks merit and therefore his motion will be denied.

## Legal Standard

Section 2255(a) allows a prisoner who has been sentenced to return to the court in which he was convicted and request his release on the grounds that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A petitioner seeking relief under § 2255 faces a tall order. Indeed, such relief is only available "in extraordinary situations, such as an error of constitutional or

2

jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)); *see also*, *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (describing relief under § 2255 as an "extraordinary remedy and therefore only available in limited circumstances") (citation omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const. amend. VI. Here, Decker is requesting relief under § 2255 claiming that he was denied his Sixth Amendment right to the effective assistance of counsel. [DE 68.] When reviewing a § 2255 motion claiming ineffective assistance of counsel, I evaluate the claim using the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) ("Generally, claims of ineffective assistance of counsel are evaluated under a two-prong analysis announced in *Strickland*.").

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

3

different.'" *McDowell*, 497 F.3d at 761 (quoting *Strickland*, 466 U.S. at 694). If the petitioner fails to illustrate that either prong of the test is satisfied, there is no need for me to evaluate the other prong. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) ("A defendant's failure to satisfy either prong is fatal to his claim.").

Generally, I take a deferential view of attorney performance with the underlying assumption being that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). For me to decide that counsel's representation was inadequate, counsel's representation must have fallen "below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted). Making a showing that counsel's representation was constitutionally inadequate is not easy. *See Jordan*, 831 F.3d at 846.

As for the second prong, to make a showing that counsel's inadequate representation led to prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 989 (7th Cir. 2021) (citation omitted). Counsel's conduct must have "so undermined the proper functioning

4

of the adversarial process that the trial cannot be relied on as having produced a just result." *United States v. Hise*, 65 F.4th 905, 909 (7th Cir. 2023) (citation omitted). A review of whether counsel's performance caused prejudice is "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

## Discussion

The premise for Decker's motion is that the felon in possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional. Because he pleaded guilty to a violation of this statute, Decker requests this Court to vacate his conviction and sentence. He seeks this outcome through 28 U.S.C. § 2255 by arguing that his counsel was ineffective for failing to move to dismiss the indictment charging him under 18 U.S.C. § 922(g)(1). Because it guides my analysis of his ineffective assistance of counsel claim, I first address the state of Second Amendment jurisprudence as it relates to § 922(g)(1).

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court identified the "core" of the Second Amendment as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 634–35 (2008). The Court in *Heller* made clear that "the right secured by the Second Amendment is not unlimited" and emphasized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by

5

felons[.]" *Id*. at 626. A plurality of the Supreme Court in *McDonald v. City of Chicago* later repeated *Heller*'s assurances that the Court's rulings "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons[.]" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

Two months before the government issued its Superseding Indictment [DE 21] in Decker's case, the Supreme Court issued a landmark ruling that altered the way courts evaluate the constitutionality of gun regulations. In *Bruen*, the Supreme Court analyzed a New York law making it a crime to possess a firearm without a license, both inside and outside the home. 597 U.S. at 11–14. *Bruen* established a two-step test to evaluate gun regulations. Courts are to first determine whether "the Second Amendment's plain text covers and individual's conduct." *Id*. at 24. If the answer is yes, then "the Constitution presumptively protects that conduct." *Id*. In that case, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

*Bruen*, citing *Heller* and *McDonald*, continued to describe the Second and Fourteenth Amendments as protecting "the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense." *Id*. at 8–9 (emphasis added). The notion that this Second Amendment right protects "law-abiding, adult citizens" is repeated throughout Justice Thomas' opinion. *Id*. at 9, 15, 26, 30–31, 38, 60, 70–71. Justice Alito's concurrence noted "[a]ll that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home

6

for self-defense[.]" *Id.* at 76 (Alito, J., concurring). And Justice Kavanaugh's concurrence quoted *Heller*'s instruction that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626) (Kavanaugh, J., concurring). I interpret these clear statements from the Court as evidence that people who have been adjudicated as felons simply do not fall into a class of citizens protected by the Second Amendment at the first step in *Bruen*'s new framework.

A month before Decker filed his 2255 motion, the Supreme Court considered its decision in *Bruen* in light of 18 U.S.C. § 922(g)(8), a different subsection of the same statute Decker now challenges. But this decision did nothing to alter *Heller*'s instruction that the Second Amendment does not bar prohibitions on the possession of firearms by felons. In *United States v. Rahimi*, the Supreme Court commented on *Bruen*'s requirement to evaluate whether a gun regulation "is consistent with the Nation's historical tradition of firearm regulation." 602 U.S. 680, 689 (2024) (quoting *Bruen*, 597 U.S. at 24). The Supreme Court clarified that this historical analysis does not require "regulations identical to the ones that could be found in 1791" or "a law trapped in amber." *Id.* at 691–92. Instead, the challenged gun regulation must "comport with the principles underlying the Second Amendment" and be analogous to historical precursors. *Id.* at 692. Justice Roberts noted "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary

7

laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id*.

In *Rahimi* the Supreme Court upheld the constitutionality of § 922(g)(8), which prohibits possession of a firearm while subject to a domestic violence restraining order, as applied to the petitioner. In doing so, the Supreme Court declined to hold "that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id*. at 698. *Rahimi* did nothing to alter *Heller*'s cabining of the Second Amendment right to law abiding citizens. Indeed, Justice Roberts reiterated *Heller*'s holding that prohibitions on the possession of firearms are presumptively lawful, an understanding Justice Kavanaugh reiterated in concurrence *Id*. at 699, 735.

Decker is correct that challenges to the constitutionality of the federal felon in possession statue, § 922(g)(1), have proliferated in *Bruen*'s wake. The Third Circuit held § 922(g)(1) unconstitutional as applied to a felon convicted of making a false statement. *Range v. Attorney General United States*, 124 F.4th 218 (3d. Cir. 2024). But the Tenth and Eighth Circuits have rejected challenges to the constitutionality of § 922(g)(1) as applied to the circumstances of those cases. *Vincent v. Garland*, 80 F.4th 1197, 1199–1202 (10th Cir. 2023) (upholding § 922(g)(1) against a nonviolent felon's post-*Bruen*, as-applied Second Amendment attack), *cert. granted, judgment vacated*, 144 S. Ct. 2708 (2024), and *adhered to sub nom. Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025); *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024) (upholding § 922(g)(1) and declining to draw

a distinction between violent and nonviolent felonies because "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society."), *reh'g en banc denied*, 121 F.4th 656 (8th Cir. 2024), *and cert. denied*, No. 24-6517, 2025 WL 1426707 (May 19, 2025).

The Seventh Circuit has not definitively answered the question of § 922(g)(1)'s constitutionality post *Bruen* and *Rahimi*. In *Atkinson v. Garland*, the Seventh Circuit remanded on the issue of whether convicted felons are protected by the plain text of the Second Amendment so that the district court could conduct new analysis consistent with *Bruen*. 70 F4th 1018 (7th Cir. 2023). But as recently as April 2024, the Circuit commented that arguments that the Second Amendment permits felons to possess firearms were "hard to square" with *Heller*, *McDonald*, and even *Bruen* itself. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). The Seventh Circuit heard arguments in December 2024 to determine the question of whether § 922(g)(1) violates the constitution. *See United States v. Prince*, No. 23-3155 (7th Cir. argued Dec. 11, 2024).

With this background, I now return to Decker's ineffective assistance of counsel claim. Decker fails to prove that the "result of [his] proceeding would have been different" had his counsel moved to dismiss his indictment post-*Bruen*. *See Strickland*, 466 U.S. at 694. As the above analysis demonstrates, I join all my colleagues in this District who have upheld the constitutionality of 18 U.S.C. § 922(g)(1) post *Bruen* and *Rahimi*. *See United States v. Regalado*, 709 F.Supp.3d 619 (N.D. Ind. 2023) (Liechty, J.); *United States v. Williams*, Case No. 2:23-CR-59 JD, 2024 WL 1528653 (N.D. Ind. Apr. 9,

2024) (DeGuilio, J.); *United States v. Eason*, Cause No. 1:22-CR-65-HAB, 2024 WL 639350 (N.D. Ind. Feb. 15, 2024) (Brady, C.J.); *United States v. Garcia*, Cause No. 2:23-CR-076-PPS-JEM, 2024 WL 1174045 (N.D. Ind. Mar. 19, 2024) (Simon, J.); *United States v. Hill*, 2:20 CR 83, 2024 WL 3043307 (N.D. Ind. Jun. 18, 2024) (Moody, J.); *United States v. Razo*, Case No. 2:23-CR-127-GSL-APR, 2024 WL 3291762 (N.D. Ind. Jul. 3, 2024) (Lund, J.).

To hold otherwise would ignore both the distinct contexts in which the Supreme Court analyzed the scope of Second Amendment protections in *Bruen* and *Heller*, as well as its repeated statements reaffirming that the Second Amendment only protects law abiding, responsible citizens. To the contrary, the fact that the Supreme Court has repeatedly reaffirmed such rights strongly suggests the text of the Second Amendment does not cover convicted felons' possession of firearms. In short, if the Supreme Court didn't mean what it said in those earlier cases, I prefer to let that Court (or the Seventh Circuit) tell me otherwise. For now, I'm content to leave well enough alone.

In sum, based on the repeated clear language of the Supreme Court, it is clear to me that people who have been adjudicated as felons simply do not fall into a class of citizens protected by the Second Amendment. That is especially true of felons like Decker who have racked up an impressive resume of felonies—three burglaries, an escape, and an attempted robbery—along with a host of other convictions. [*See* DE 50 at 7–14.] So even if the Supreme Court ultimately takes the tack suggested by then-Circuit Judge Barrett in *Kanter v. Barr*—that only ''dangerous'' felons can be constitutionally disarmed, 919 F.3d 437, 451 (Barrett, J., dissenting)—it would not redound to Decker's

10

benefit. In other words, even if I have to consider the *type of felony* to determine whether the Second Amendment applies, I am confident that violent felons like Decker will not be included in any putative exception.

All of this means that had Decker's counsel raised this issue in a motion to dismiss his Superseding Indictment, that motion would have been denied, just as I have denied all similar motions. This is another way of saying that, under *Strickland*, there is a lack of prejudice here. "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (quoting *Strickland*, 466 U.S. at 694). There is simply no probability sufficient to undermine confidence in the outcome of Decker's case. Decker has not shown that he suffered prejudice by his counsel failure to move to dismiss as unconstitutional his indictment under § 922(g)(1). *See United States v. Daniels*, Case No. 2:22-CR-91 JD, 2025 WL 1148426 (N.D. Ind. Apr. 18, 2025) (finding no ineffective assistance of counsel in § 2255 petition for counsel's failure to challenge defendant's indictment under § 922(g)(1)).

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant

11

"has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005) (citation omitted). For the reasons set forth above, I find no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2). If Decker wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

**ACCORDINGLY**:

Defendant Scott Patrick Decker's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. §2255 [DE 68] is **DENIED** and a certificate of appealability is **DENIED**.

**SO ORDERED**.

ENTERED: June 5, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT